IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| J.M. and M.M.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; SCIENCE APPLICATIONS INTERNATIONAL CORPORATION; and SCIENCE APPLICATIONS INTERNATIONAL CORPORATION PRUDENT BUYER PLAN ANTHEM STANDARD PLAN,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 1:26-cv-5908 |

**COMPLAINT**

Plaintiffs J.M. and M.M, by and through undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

**INTRODUCTION**

J.M. was a participant in a health plan funded and insured by his employer. J.M. enrolled his child, M.M. in that plan as a beneficiary. M.M. received more than three months of mental health treatment at Evoke at Entrada ("Evoke"). Defendants denied coverage for any of the treatment M.M. received at Evoke, as well as crisis intervention services rendered by Right Direction Crisis Intervention ("Right Direction"). As a result, Plaintiffs incurred over $61,000 in expenses. In refusing payment for M.M.'s treatment, Anthem, the claims administrator for the plan, provided multiple contradicting reasons, including that the services provided were not covered and/or required pre-approval. Anthem did not assert that M.M.'s treatment was not

medically necessary. Anthem denied Plaintiffs' appeal. Plaintiffs file this action to obtain benefits due under the Plan, and alternatively, to obtain appropriate equitable relief for Anthem's violation of federal mental health parity law.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs are, and were at all times relevant hereto, residents of Arapahoe County, Colorado. J.M. is M.M.'s father.

2. At all times relevant hereto, J.M. was employed with Science Applications International Corporation ("SAIC"), and was a participant in the Defendant Science Applications International Corporation: Prudent Buyer Plan (the "Plan") issued by Anthem Blue Cross Life and Health Insurance Company ("Anthem")

3. M.M. is J.M.'s dependent and was a minor at all times relevant hereto.

4. As J.M.'s dependent, M.M. was at all times relevant hereto, a beneficiary under the Plan.

5. Defendant SAIC is the Plan Administrator and is headquartered in Virginia.

6. Defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem") is corporate entity.

7. SAIC contracted with Anthem to handle the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

8. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

9. The Plan is self-insured by SAIC. Anthem determines and pays claims and is a fiduciary of the Plan as defined by ERISA.

10. Plaintiffs bring this lawsuit to obtain an order requiring Defendants to pay or reimburse expenses incurred during M.M.'s treatment at Evoke. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); and in the alternative for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); as well as an award of pre-judgment interest and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

11. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

12. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the residence of the Plaintiffs, who are making the claims for the benefits at issue herein.

## FACTUAL ALLEGATIONS[1]

*Allegations regarding the Plan*

13. SAIC issued the Prudent Buyer Plan, Anthem Standard Plan Benefit Booklet (the "Benefits Booklet").

14. Upon information and belief, the Benefits Booklet, together with any summaries of material modifications, combined constitute the official summary plan description for the Plan.[2]

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.
[2] *See generally*, SAIC Prudent Buyer Plan, Anthem Standard Plan Benefit Booklet.

15. SAIC contracted with Anthem to be its service representative to handle the day-to-day administration of the Plan and appointed Anthem as its agent to answer benefit questions, make benefit decisions, pay claims, and process benefit claims and appeals.[3]

16. In general, the Plan pays "Covered Services" incurred by a person while covered under the Plan for charges for services or supplies that are medically necessary for the care and treatment of an injury or sickness.[4]

17. The Plan stated that it covered services related to "Mental Health or Substance Use Disorder", which included "Inpatient *hospital* services and services from a *residential treatment center* as stated in the "Hospital" provision of this section, for inpatient services and supplies."[5]

18. "Residential treatment center" is defined by the Plan as:

> an inpatient *facility* that treats *mental health or substance use disorder* conditions. The *facility* must be licensed as a treatment center pursuant to state and local laws. The *facility* must be fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).
> The term *residential treatment center/facility* does not include a provider, or that part of a provider, used mainly for:
> - Nursing care
> - Rest care
> - Convalescent care
> - Care of the aged
> - Custodial care
> - Educational care[6]

19. The Plan defines "facility" as "a facility including, but not limited to, a *hospital*, freestanding *ambulatory surgery center*, chemical dependency treatment *facility*, *residential*

---

[3] Benefits Booklet at 18-19, 125 ("*Claims Administrator*").
[4] Benefits Booklet at 2-3, 19.
[5] Benefits Booklet at 43.
[6] Benefits Booklet at 135-6.

*treatment center*, *skilled nursing facility*, or mental health *facility*, as defined in this booklet. The *facility* must be licensed as required by law, satisfy our accreditation requirements, and be approved by us."[7]

20. The Benefits Booklet defines "Medically Necessary" as:

> procedures, supplies, equipment or services are those considered to be:
>
> 1. Appropriate and necessary for the diagnosis or treatment of the medical condition;
>
> 2. Clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the patient's illness, injury or disease;
>
> 3. Provided for the diagnosis or direct care and treatment of the medical condition;
>
> 4. Within standards of good medical practice within the organized medical community;
>
> 5. Not primarily for your convenience, or for the convenience of your *physician* or another provider;
>
> 6. Not more costly than an equivalent service, including the same service in an alternative setting, or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and
>
> 7. The most appropriate procedure, supply, equipment or service which can safely be provided. The most appropriate procedure, supply, equipment or service must satisfy the following requirements:
>
> a. There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately greater risk of harm or complications, for you with the particular medical condition being treated than other possible alternatives; and
>
> b. Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable.

[7] Benefits Booklet at 127-28.

> For purposes of treatment of *mental health* and *substance use disorder*, Medically Necessary means a service or product addressing the specific needs of that patient, for the purpose of preventing, diagnosing, or treating an illness, injury, condition, or its symptoms, including minimizing the progression of an illness, injury, condition, or its symptoms, in a manner that is all of the following:
>
> (i) In accordance with the Generally Accepted Standards of Mental Health and Substance Use Disorder Care,
>
> (ii) Clinically appropriate in terms of type, frequency, extent, site, and duration, and
>
> (iii) Not primarily for the economic benefit of the Claims Administrator and the Member or for the convenience of the patient, treating Physician, or other health care Provider.[8]

21. The Plan contains an exclusion that states in its entirety as follows: "Wilderness. Wilderness or other outdoor camps and/or programs."[9] The Benefits Booklet does not define or describe what programs would be excluded from coverage under this exclusion.

*Background of M.M.'s medical issues and treatment*

22. M.M. was diagnosed with generalized anxiety disorder, persistent depressive disorder, narcissistic personality features, cannabis use disorder, alcohol use disorder, attention-deficit/hyperactivity disorder, parent-child relational problems, and academic or educational problems under the criteria described in the DSM-5.

23. Before being treated at Evoke, M. M. had been admitted to a residential treatment that was covered under the Plan, Sandstone Care, for about a month of treatment. M. M. required that treatment due to M.M.'s increasingly deteriorating behaviors, including increasing use of substances and intense oppositional and defiant behavior.

---

[8] Benefits Booklet at 130-31.
[9] Benefits Booklet at 59.

24. M.M. was discharged from Sandstone Care because the professionals at that facility determined they could not meet M.M.'s needs. Those professionals recommended that Evoke could provide the care that M.M. needed and wrote a thorough discharge summary laying out M.M.'s particular treatment needs.

25. On March 21, 2024, M.M. required crisis intervention transportation from Right Directions Crisis Intervention from Sandstone Care to Evoke.

26. Right Directions charged $3,551.89 for its transportation services, which charges were submitted to Anthem.

27. Anthem has not yet processed these claims despite the fact that they were submitted by Plaintiffs to Anthem on August 22, 2024.

28. M.M. received treatment for diagnosed disorders at Evoke from March 22, 2024, through July 5, 2024.

29. Evoke was a 24/7 outdoor behavioral health treatment facility that was duly licensed by the State of Utah to provide outdoor behavioral health services to adolescents, as required by the governing Utah state regulations.[10] It was based in Santa Clara, Utah.

30. Evoke was also accredited by a national organization, which further demonstrated their commitment to excellence in healthcare.

31. M.M. benefitted from the intensive behavioral therapy treatment received at Evoke and had improvements in each of his diagnosed conditions from the services received at Evoke.

32. Evoke charged over $60,000 for the services it provided to M.M., which charges were submitted to Anthem.

[10] Evoke permanently closed operations in September of 2024.

33. Anthem issued several denial explanations of benefits (EOBs) for M.M.'s treatment at Evoke.

34. In the three separate denial EOBs from Anthem, Anthem cited multiple codes/reasons for its denial of M.M.'s treatment at Evoke.

35. Regarding dates of service May 16, 2024, to May 31, 2024, and July 1, 2024, to July 5, 2024, the denial code/reason stated:

> **015 The amount shown here is more than your plan allows for this care. If this was not an emergency, the doctor/facility might bill you for the difference between what your plan allowed and what the doctor/facility charged.**

36. For dates of service April 1, 2024, to April 15, 2024, and June 1, 2024, to June 30, 2024, the denial code/reason stated:

> **01 We denied this service. Your benefits don't cover this kind of care. You can check your plan documents or go to the Benefits section of our website for a searchable list of what's covered. It also includes a list of the plan's service limits. It's the right place to get an appeal started. Refer to your plan of coverage booklet for details regarding plan definitions/exclusions/limitations (what is not covered).**

37. For dates of service May 1, 2024, through May 15, 2024, the denial code/reason stated:

> **707 This service requires preapproval. Your plan doesn't cover this service without it. You are responsible for this amount. You can avoid these charges in the future by asking your doctor if the service requires preapproval. Refer to you plan of coverage booklet for details regarding plan definitions/exclusions/limitations (what is not covered).**

*M.M.'s Level One Member Appeal*

38. Following receipt of Anthem's denial EOBs for M.M.'s treatment at Evoke, as well as Anthem's failure to process Plaintiffs' claim from Right Directions, Plaintiffs filed with Anthem a Level One Member Appeal in a letter dated February 18, 2025.

39. In their Level One Member Appeal, Plaintiffs:

(a) Requested Anthem assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices for outdoor behavioral health programs in the State of Utah;

(b) Requested a response from Anthem that was clear and specifically stated the reasons for the determination, referenced the plain language on which Anthem's decision was based, and explained what other information J.M. could provide to Anthem to perfect M.M.'s claim;

(c) Requested a physical copy of all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials and experience;

(d) Noted that the Plan provides coverage for inpatient treatment in residential treatment centers when rendered by licensed, accredited providers, and that Evoke is licensed by the state of Utah to provide 24/7 outdoor behavioral health services to adolescents which meets the Plan's definition of a covered residential treatment center;

(e) Showed that M.M.'s claims from Evoke met the Plan's requirements for reimbursable mental health care benefits;

(f) Noted that Evoke qualified as an intermediate behavioral health facility under the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) because Evoke provided services that fall between inpatient care for acute conditions and regular outpatient care for people with mental health conditions or substance use disorders;

(g) Requested Anthem conduct a comparative parity analysis to determine whether or not the Plan is truly being administered in compliance with the MHPAEA and provide her with physical copies of any documentation used; and

(h) Pointed out that Anthem used faulty rationale in refusing to process M.M.'s claims from Evoke.

40. On November 10, 2025, Anthem submitted a half-page letter to Second Nature Entrada (Evoke's successor business following its closure in 2024). The letter was ostensibly responding to the Level One Member Appeal, but that appeal was not referenced in the letter.

41. The November 10, 2025, letter only specifically referenced M.M.'s treatment dates of April 16-30, 2024.

42. In the letter Anthem stated:

> We have received your claim or inquiry about the services listed above. Our research indicates the following:
>
> please be advised the claims were reviewed and it was determined the Provider is not eligible to receive reimbursement for these Services per Provider Contract. If you still disagree, you may contact your Provider Representative.[11]

43. Beyond this letter directed at Evoke, Plaintiffs have received no other correspondence in connection with their February 18, 2025, Level One Member Appeal.

44. None of the EOBs or the denial letter cited any Plan provision supporting its denial or applying the circumstances of the claim to any Plan language.

45. None of the EOBs or denial letter explained how Plaintiffs could perfect their claim.

[11] November 10, 2025, Letter from Anthem.

46. The denial letter did not address Plaintiffs' arguments on appeal, nor did it provide any of the requested documentation or analysis regarding ERISA or MHPAEA.

47. The EOBs and denial letter were not correct or reasonable. The services that Right Directions and Evoke provided to M.M. were covered services under the Plan and not subject to any exclusions.

48. As set forth above, Plaintiff's exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

49. The denial and refusal to process claims by Anthem/the Plan solely and directly caused Plaintiffs to pay over $60,000 for M.M.'s treatment at Evoke and transportation from Right Directions.

50. Litigation is Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

51. Plaintiffs have retained the undersigned to pursue their rights and remedies under ERISA.

52. Plaintiffs do not seek double recovery.

**FIRST CAUSE OF ACTION**
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

53. All allegations of this Complaint are incorporated here as though fully set forth herein.

54. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

55. Defendants wrongly refused coverage for M.M.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders. It is exactly those services that M.M. received from Evoke and Right Directions.

56. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim refusals/denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

57. Defendants' refusal to process Plaintiffs' claim for Right Direction and their conclusory EOBs and denial letter demonstrate the absence of a meaningful analysis of Plaintiffs' claims and appeal. Among other things, Defendants did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

58. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in M.M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of M.M.'s claims.

59. Defendants' actions in denying payment for M.M.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

**SECOND CAUSE OF ACTION**
**(Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))**

60. All allegations of this Complaint are incorporated here as though fully set forth herein.

61. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Anthem/the Plan's fiduciary duties.

62. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

63. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

64. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

65. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.M.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

66. The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner enacted by Defendants for M.M.'s treatment at Evoke.

67. Upon information and belief, Anthem/the Plan's denial of coverage and failure to pay benefits also violated the MHPAEA in application or effect. Because Defendants Plan declined

to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

68. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

69. For example, to the extent that Defendants' denial is based on the Plan's undefined "wilderness exclusion," various courts have rightly concluded that such exclusions have the practical effect of more frequent denials of mental health care, as medical/surgical care is rarely, if ever, provided in a context that could be described as "wilderness."

70. Plaintiffs expressly requested Anthem to perform a MHPAEA analysis of the Plan. They expressed serious concern that Defendants were violating the statute and asked for a response using specific and direct examples. Anthem failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letters or EOBs.

71. These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a) A declaration that the actions of Defendants violate the MHPAEA;

(b) An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

(c) An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d) An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e) An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f) An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g) An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h) An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

72. In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount incurred for M.M.'s treatment at Evoke and Right Directions and;

2. Pre- and post-judgment interest to the date of payment;

3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 6th day of November, 2026.

Respectfully submitted,

/s/ John M. Mejia

John M. Mejía (Utah Bar No. 13965)
Anna P. Christiansen (Utah Bar No. 17518)
**CHRISTENSEN & JENSEN, P.C.**
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
Email: john.mejia@cjlaw.com
Email: anna.christiansen@cjlaw.com

*Attorney for Plaintiffs*